UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

MICHAEL BRUCE KLEVERING,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.

_____/

Case No. 1:24-cv-992

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (Compl., ECF No. 1, PageID.9.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997) *overruled in other part by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendant has not yet been served, the undersigned concludes that the Defendant is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way the Defendant is not a party who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record

2

does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint on the grounds of immunity and failure to state a claim upon which relief may be granted.

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan. The events about which he complains, however, occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. Plaintiff sues the MDOC, Unknown Party #1 (identified as a Corrections Officer with the rank of captain), Unknown Party #2 (identified as a Corrections Officer), Unknown Party #3 (identified as a Corrections Officer with the rank of lieutenant), and

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Unknown Party #4 (identified as the Assistant Resident Unit Supervisor/Counselor of housing unit 3 during in late December of 2023). Plaintiff sues Defendants in their official capacities only.

Plaintiff alleges that he was involved in a fight with two other inmates—gang members—on December 13, 2023. (Compl., ECF No. 1, PageID.3.) On December 20, 2023, he was found guilty of fighting. (*Id*.) Plaintiff reports that, before he could be released from segregation, the Security Classification Committee (SCC) was required to ascertain whether it was safe for him to return to the general population. (*Id*.) The SCC informed Plaintiff that he was to remain in segregation pending transfer to another facility. (*Id*.) Plaintiff alleges that he was kept in segregation for his safety—to keep him separate from the other inmates he had fought with and the members of their gang. (*Id*.)

On December 25, 2023, at about 1:30 p.m., Plaintiff was leaving the control center for a visit. Unknown Party #1 stopped Plaintiff and asked if he could go back to general population because segregation was full. Plaintiff advised Unknown Party #1 that he did not think it was safe. (*Id*.) Unknown Party #1 told Plaintiff to think about it and that someone would shortly ask Plaintiff about moving to general population. (*Id*.)

About one-half hour later, Unknown Party #2 approached Plaintiff in his segregation cell. Unknown Party #2 gave Plaintiff a direct order to return to general population. (*Id*.) Plaintiff alleges that Unknown Party #2 was aware of why Plaintiff was in segregation and the risk to Plaintiff's safety if he was returned to general population. (*Id*., PageID.3–4.) Nonetheless, Plaintiff informed Unknown Party #2 once again of the threat to Plaintiff's health and safety in general population. (*Id*., PageID.4.) Unknown Party #2 told Plaintiff that the only way Plaintiff could remain in segregation was if he refused to go to general population; then Plaintiff would receive a misconduct ticket for disobeying a direct order and he could remain in segregation. (*Id*.)

Between 2:00 and 2:30 p.m., while Plaintiff was leaving segregation, he encountered Unknown Party #3. (*Id.*) Plaintiff explained the situation to Unknown Party #3, including the risk to Plaintiff's safety if he returned to general population and that he was awaiting transfer to avoid that danger. (*Id.*) Unknown Party #3 told Plaintiff that there was nothing that could be done and to "lay low." (*Id.*, PageID.5.) Unknown Party #3 told Plaintiff that the segregation cell was needed for someone else. (*Id.*)

Between 2:00 p.m. and 3:00 p.m., Plaintiff went to the control center to receive a bed roll. (*Id.*) While Plaintiff was there, he asked to speak to Unknown Party #1. (*Id.*) Unknown Party #1 took Plaintiff into an office inside the control center. (*Id.*) Plaintiff talked to Unknown Party #1 for 10 minutes regarding the risks Plaintiff faced in general population. (*Id.*, PageID.5–6.) Unknown Party #1 advised Plaintiff that he would still be transferred and that he should try to stay safe until the transfer occurred. (*Id.*, PageID.6.)

The next day, between 8:00 a.m. and 10:00 a.m., Plaintiff spoke with Unknown Party #4, the Assistant Resident Unit Supervisor for unit 3. (*Id.*) Plaintiff advised her about the threats to his safety. (*Id.*) She told Plaintiff that she did not believe the threat was credible because Plaintiff would not have been released from segregation if he was in that much danger. (*Id.*) She told Plaintiff that there was nothing she could do unless something happened to Plaintiff. (*Id.*, PageID.7.)

Over the lunch hour, as Plaintiff was getting his lunch, he was assaulted by another inmate. (*Id.*) Plaintiff alleges that the assault "was the result of [the] fight that took place on 12-13-23." (*Id.*) Plaintiff reports that he suffered concussion like symptoms as well as other injuries to his head, neck, and back. (*Id.*)

On December 27, 2023, Plaintiff spoke with the segregation unit Assistant Resident Unit Supervisor, Ms. Wilson (not a defendant). (*Id*., PageID.7–8.) Plaintiff asked her why he had been released from segregation on December 25. (*Id*., PageID.8.) She stated that staff was supposed to "ask" Plaintiff if he thought it was safe to go to general population. (*Id*.) They were not supposed to force Plaintiff to go to segregation with threats of a misconduct ticket. (*Id*.) She explained that what happened was not what was supposed to happen, and that it was a mistake. (*Id*.) She apologized. (*Id*.)

Plaintiff contends that the Defendants were deliberately indifferent to Plaintiff's health and safety when they forced him to go from segregation to general population on December 25, 2023. Plaintiff seeks $100,000.00 in damages. (*Id*., PageID.9.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Here, even accepting all facts in Plaintiff's complaint as true, he is not entitled to relief.

6

A.  **Defendant MDOC**

Plaintiff may not maintain a Section 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a Section 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Therefore, Plaintiff's claim against the MDOC is properly dismissed on grounds of immunity.

In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under Section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013). Therefore, Plaintiff's allegations against the MDOC also fails to state a claim.

B.  **Defendants Unknown Parties # 1–4**

In that portion of the approved form complaint where Plaintiff is asked to identify the capacity in which he is suing the Defendants, official and/or personal, Plaintiff indicated he was suing the Defendants in their official capacity. (Compl., ECF No. 1, PageID.2.) In *Rashada v. Flegel*, No. 23-1674, 2024 WL 1367436 (6th Cir. Apr. 1, 2024), the United States Court of Appeals

7

for the Sixth Circuit determined that the response of "official" to the capacity prompt on this Court's approved form complaint "does not leave room for doubt" regarding the capacity in which defendants are sued. *Rashada*, 2024 WL 1367436, at *3.

A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will*, 491 U.S. at 71; *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592–93 (6th Cir. 1989). And, as discussed above, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under Section 1983 for money damages. Monetary damages are the only relief that Plaintiff seeks. Therefore, the Court also dismisses, for failure to state a claim upon which relief may be granted, the suit for monetary relief against the individual Defendants in their respective official capacities. Nonetheless, the Court dismisses Plaintiff's allegations without prejudice. *Cf. Rashada*, 2024 WL 1367436.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's claims against the MDOC will be dismissed with prejudice on grounds of immunity and for failure to state a claim upon which relief may be granted, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court determines that Plaintiff's claims against the individual Defendants in their official capacities will be dismissed without prejudice on the grounds of immunity and failure to state a claim upon which relief may be granted, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court

concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of Section 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  October 2, 2024         /s/ Sally J. Berens
                                SALLY J. BERENS
                                United States Magistrate Judge